IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHEASTERN MATERIALS, INC. ) | Case No. 09-52606 |
| ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

## MEMORANDUM OPINION

This matter came before the Court on June 30, 2010 upon the Motion to Compel Debtor to Reject Equipment Lease and for Relief from the Automatic Stay and Supporting Memorandum of Law (the "Motion") filed by TCP Leasing, Inc. ("TCP") on April 7, 2010.  An initial hearing was held on April 28, 2010.  At that hearing, Paul E. Davis appeared on behalf of TCP, Benjamin A. Kahn appeared on behalf of First Bank, Robert E. Price, Jr. appeared on behalf of the United States Bankruptcy Administrator, David F. Meschan appeared on behalf of the Unsecured Creditors Committee (the "Committee"), and Edwin H. Ferguson, Jr. appeared on behalf of the above-referenced debtor (the "Debtor").  At the request of the parties, the matter was continued to May 19, 2010, and continued a second time to June 30, 2010.  At the June 30 hearing, the Court ruled from the bench.  This opinion memorializes the basis for the Court's ruling.

### I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core

proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(B), (G), (K) and (O), which this Court has the jurisdiction to hear and determine.

## II.  FACTS

On January 16, 2006, the Debtor and TCP entered into an equipment lease agreement (the "Master Agreement").[1]  The Master Agreement is not terminable by the Debtor.  Paragraph 4 states, in all capitals: "This lease is irrevocable and lessee may not revoke, cancel or terminate the lease, either in part or whole, during the term hereof for any reason whatsoever."

The Master Agreement purports to create a lease.  Paragraph 17 states that "[t]he Equipment remains the personal property of Lessor and Lessee shall have no right, title or interest therein or thereto except as expressly set forth herein."  But paragraph 18 states that "[t]he parties intend this transaction to be a True Lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this transaction is not a True Lease, but is in the nature of a sale, consignment or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the equipment from the date of this agreement to secure the payment of all Lessee's indebtedness to Lessor."

The specific terms of the agreement between TCP and the Debtor are governed by two separate schedules.  The Master Agreement provides that in the event of a conflict, the terms in the schedules shall prevail.  Additionally, each schedule states that the lease terms are merged into and superceded by the schedule.

---

[1]The Master Agreement is dated December 13, 2005. However, it was executed by the Debtor on January 11, 2006, and by TCP on January 16, 2006.

On December 18, 2005, TCP and the DR entered into Equipment Schedule No. 1[2], which covers time clocks, workforce manager software, and a workforce support package. The monthly rental was $897.68. The "equipment cost" was $29,814.81, and the schedule provides that the Debtor has the option to purchase the equipment, at the end of the lease term, for its fair market value. The Final Certificate of Delivery and Acceptance reflects that the equipment was delivered to the Debtor on January 11, 2006.

On March 23, 2007, TCP and the Debtor entered into Equipment Schedule No. 2, which covers a linear feed saw and transformer. The monthly rental was $3,505.97. The "equipment cost" was $155,821.00, and the schedule provides that the Debtor has the option to purchase the equipment, at the end of the lease term, for $1.00. The Final Certificate of Delivery and Acceptance reflects that the equipment was delivered to the Debtor on March 26, 2007. TCP filed a UCC-1 financing statement covering the feed saw and transformer on April 18, 2007 – twenty three days after the equipment was delivered. First Bank has a lien on the feed saw and transformer pursuant to a blanket security agreement dated October 31, 2000, and perfected by a UCC-1 financing statement filed on April 11, 2006.

On December 30, 2009, the Debtor filed its Chapter 11 petition. On April 7, 2010, TCP filed the Motion, seeking an order (1) granting relief from the automatic stay; (2) compelling the Debtor to reject the purported lease; and (3) directing the Debtor to pay to TCP all unpaid post-petition rent.

---

[2]The parties' disagreement relates to Equipment Schedule No. 2, not Equipment Schedule No. 1. First Bank does not contest the Motion as it relates to Equipment Schedule No. 1. Therefore, although the Court will rule on the Motion with respect to both schedules, this opinion primarily addresses the controversy as it relates to Equipment Schedule No. 2.

On April 21, 2010, First Bank filed an objection to the Motion, arguing that it had a first-priority, perfected lien with regard to the feed saw and transformer and that Equipment Schedule No. 2 was a secured transaction, not a true lease. On April 23, 2010, the Committee filed a response to the Motion, arguing that if the transaction was a true lease, then the Debtor should not be forced to assume or reject the lease at such an early stage of the case. On the other hand, the Committee argued that if it was a secured transaction, then the stay should not be lifted until it was determined whether the equipment was needed for a successful reorganization.

### III.  DISCUSSION

This case involves two issues. First, the Court must determine whether the contractual relationship created by the Master Agreement and Equipment Schedule No. 2 was a true lease or a disguised security interest. Second, if the transaction was not a true lease, and instead created a security interest, the Court must determine whether TCP's lien has priority over First Bank's lien.

    A.    <u>The Debtor's Contract With TCP Created a Security Interest, Not a Lease</u>

U.C.C. § 1-203, codified in N.C. Gen. Stat. § 25-1-203, addresses whether a transaction creates a true lease or a disguised security interest. It states that "[w]hether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case." N.C. Gen. Stat. § 25-1-203(a).

Section 1-203(b) states:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;

> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

N.C. Gen. Stat. § 25-1-203(b).[3] The official comments to U.C.C. § 1-203 state that "[s]ubsection (b) further provides that a transaction creates a security interest if the lessee has an obligation to continue paying consideration for the term of the lease, if the obligation is not terminable by the lessee . . . and if one of four additional tests is met." U.C.C. § 1-203, cmt. 2 (2004). "[A]ll of these tests focus on economics, not the intent of the parties." Id.

U.C.C. § 1-203 creates a two-step test for determining whether an agreement is a true lease or a disguised security interest. The first step is frequently referred to as a bright-line test. To satisfy the bright-line test, codified in Section 1-203(b), a court must determine that the "lease" is not subject to termination by the lessee and that at least one of the four conditions is satisfied. In re Phoenix Equipment Co., No. 08-13108, slip op. at 7 (Bankr. D. Ariz. September 30, 2009) (2009 WL 3188684). "If the lease is not terminable by the lessee and one or more of

---

[3]U.C.C. § 1-203 is a re-codification of what previously found in U.C.C. § 1-201(37). The official comments to Section 1-203 state that the "section is substantively identical to those portions of former Section 1-201(37) that distinguished 'true' leases from security interests, except that the definition of 'present value' formerly embedded in Section 1-201(37) has been placed in Section 1-201(28)." U.C.C. § 1-203, introductory cmt. (2004); see also In re Ecco Drilling Co., 390 B.R. 221, 226 n.29 (Bankr. E.D. Tex. 2008) (noting that the provisions of Section 1-201(37) had been re-codified, but that there was "no significant difference in the statutory approaches" to an issue similar to the one posed in this case, and referring to the changes as "stylistic revisions").

the enumerated conditions is present, then the contract is a per se security agreement, and the court's analysis may conclude." Id.  If the bright-line test of Section 1-203(b) is not satisfied, "then a security interest will not be conclusively found to exist, and the court will need to consider other factors." Id.; see also In re Pillowtex, Inc., 349 F.3d 711, 717 (3d Cir. 2003) (finding that the former U.C.C. § 1-201(37) set out a bright-line test); In re Ecco Drilling Co., 390 B.R. 221, 227 (Bankr. E.D. Tex. 2008) (same); In re Brankle Brokerage & Leasing, Inc., 394 B.R. 906, 911 (Bankr. N.D. Ind. 2008) (finding that N.C. Gen. Stat. § 25-1-203(b) "lays out a bright-line test or per se rule which, if satisfied, mandates the conclusion that the agreement constitutes a security interest, rather than a lease, as a matter of law").

Thus, when a lease is not terminable by the lessee and there is a nominal purchase option, a security interest exists, and no further inquiry is necessary.  See, e.g., In re Wing Foods, Inc., No. 09-08062, slip op. at 4 (Bankr. D. Idaho January 14, 2010) (2010 WL 148637) ("The Agreement . . . may not be terminated earlier [than the full lease term] by Debtor [and] also gives Debtor the right to buy the goods at the conclusion of its term by payment of the nominal amount of one dollar. [Idaho's version of U.C.C. § 1-203] and pertinent case law require nothing more to deem this transaction a sale rather than a lease.").

North Carolina's version of U.C.C. § 1-203 has been applied in the same fashion.  The Brankle Brokerage court applied N.C. Gen. Stat. § 25-1-203 and stated that "[t]he court is not aware of any decisions, from North Carolina or elsewhere, applying N.C. Gen. Stat. Ann. § 25-1-203." 394 B.R. at 911.  Nevertheless, the court, looking to relevant decisions from other jurisdictions, found that Section 25-1-203 creates a bright-line test and operates in the same manner as other states' versions of the statute. Id.

The facts of this case are straightforward. The lease was not terminable by the lessee, and the Debtor had the option to purchase the equipment at the end of the lease term for $1.00 – clearly a nominal value. Therefore, the bright-line test of N.C. Gen. Stat. § 1-203(b) is satisfied and the agreement created a security interest as a matter of law.

>    B.   <u>Since TCP Did Not File its UCC-1 Financing Statement Within Twenty Days After the Debtor Received Possession of the Equipment, First Bank Has a First Priority Security Interest in the Equipment</u>

U.C.C. § 9-324, codified in N.C. Gen. Stat § 25-9-324, addresses when a perfected purchase-money security interest[4] has priority over a conflicting perfected security interest. Subsection (a) states:

> Except as otherwise provided in subsection (g) of this section, a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and, except as otherwise provided in G.S. 25-9-327, a perfected security interest in its identifiable proceeds also has priority, if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within 20 days thereafter.

N.C. Gen. Stat. § 25-9-324(a). The exceptions in subsection (g) govern priority among multiple purchase-money security interests in the same collateral, and therefore are not applicable. The rules under Section 9-324 are "quite straightforward . . . [in that] the purchase money secured

---

[4]Purchase-money security interests are defined in N.C. Gen. Stat. § 25-9-103. Section 9-103(b)(1) provides that a "security interest in goods is a purchase-money security interest . . . [t]o the extent that the goods are purchase-money collateral with respect to that security interest." Section 9-103(a)(1) states that "'[p]urchase-money collateral' means goods or software that secures a purchase-money obligation incurred with respect to that collateral." Section 9-103(a)(2) states that "'purchase-money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Therefore, TCP has a purchase-money security interest in the equipment.

7

creditor need only perfect within 20 days after the debtor receives possession." 4 James J. White & Robert S. Summers, Uniform Commercial Code § 33-4 (6th ed. 2009).

If the creditor holding a purchase money security interest fails to perfect within 20 days after the debtor receives possession, a pre-existing perfected creditor will have priority. See In re T&R Flagg Logging, Inc., 399 B.R. 334, 339 (Bankr. D. Me. 2009) (by failing to perfect within twenty day grace period under Maine's version of Article 9, purchase-money lien holder lost its ability to trump the priority of bank's pre-existing blanket lien); Wild West World, LLC v. Larson Int'l, Inc. (In re Wild West World, LLC), Adv. No. 07-5257, slip op. at 4-5 (Bankr. D. Kan. October 17, 2008) (2008 WL 4642266) (because creditor failed to perfect within 20 days of the delivery of equipment to debtor, it was not entitled to special priority under Kansas' version of Section 9-324(a)); see also First-Citizens Bank & Trust Co. v. Four Oaks Bank & Trust Co., 576 S.E.2d 722, 725-26 (N.C. Ct. App. 2003) (holding that a purchase-money security interest had priority because it was perfected within 20 days under the former N.C. Gen. Stat. § 25-9-312(4)).

In this case, TCP did not perfect its security interest within the 20 days after the equipment was delivered to the Debtor. Perfection was accomplished by TCP 23 days after delivery. Therefore, TCP is not entitled to special priority under Section 9-324(a). Since First Bank perfected its security interest in the equipment before TCP, it has the senior security interest.

### IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Motion as it relates to Equipment Schedule No. 2. Since the Master Agreement is not terminable by the Debtor, and gives the

Debtor the option to purchase the equipment for the nominal price of $1.00, it is not a true lease. Rather, TCP has a security interest in the equipment. Moreover, because TCP did not perfect its purchase money security interest within 20 days, First Bank's pre-existing security interest has priority. However, Equipment Schedule No. 1 is a true lease, and no party contends to the contrary. The schedule provided that the Debtor had the option to purchase the equipment for its "fair market value," not a nominal value. Therefore, the court will grant TCP relief from the automatic stay as to Equipment Schedule No. 1, and order that the lease be rejected.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| SOUTHEASTERN MATERIALS, INC. | ) Case No. 09-52606 |
| | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

**PARTIES IN INTEREST**

Benjamin A. Kahn, Esq.

Paul E. Davis, Esq.

Edwin H. Ferguson, Jr., Esq.

David F. Meschan, Esq.

Ashley S. Rusher, Esq.

Michael D. West, Bankruptcy Administrator

Edward L. Embree, III, Esq.

W. Joseph Burns, Chapter 11 Trustee